1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    JOSÉ ANTONIO NEGRÓN-SANTIAGO,
4    et al.,

5
6          Plaintiffs,                          Civil No. 10-1287 (JAF)

7          v.

8    SAN CRISTOBAL HOSPITAL, et al.,

9          Defendants.

10   JOSÉ ANTONIO NEGRÓN-SANTIAGO,
11   et al.,

12         Plaintiffs,                          Civil No. 10-1289 (JAF)

13         v.

14   PUERTO RICO ELECTRIC POWER
15   AUTHORITY, et al.,

16         Defendants.

17                              **OPINION AND ORDER**

18         Plaintiffs, José Antonio Negrón-Santiago, Carmen Iris Matos-Torres, and their conjugal

19   partnership; Marta Elisa Molina-Matos; María del Carmen Negrón-Matos; and Keila Alvarez-Nieves,

20   a minor represented by her parents, Héctor Alvarez-Fernández and Iris Nieves-Ruiz, bring this

21   consolidated action arising from the death of José A. Negrón-Matos against Defendants, San Cristóbal

22   Hospital ("SCH"), Puerto Rico Electric Power Authority ("PREPA"), Unión de Trabajadores de la

23   Industria Eléctrica y Riego ("UTIER"), and various unnamed persons.  (Case No. 10-1287, Docket

24   No. 1; Case No. 10-1289, Docket No. 7.)  Plaintiffs assert claims against SCH, as well as unknown

Civil Nos. 10-1287/10-1289 (JAF)                                                                  -2-

1    doctors and insurers under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),

2    P.L. 104-91; the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; and

3    supplemental claims under Puerto Rico tort law.  (Case No. 10-1287, Docket No. 1.)  Against PREPA,

4    UTIER, and unknown insurers, Plaintiffs bring claims under Title VII of the Civil Rights Act of

5    1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; HIPAA; the "whistleblower act;"[1] the

6    Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651–678 ; 42 U.S.C. § 1983,

7    alleging violations of the First, Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments; and

8    supplemental claims under Puerto Rico law. (Case No. 10-1289, Docket No. 7). SCH moves to dismiss

9    the complaint (Case No. 10-1287, Docket No. 4), and Plaintiffs oppose (Case No. 10-1287, Docket

10   No. 5).  UTIER and PREPA move to dismiss (Case No. 10-1289, Docket Nos. 13 (UTIER); 16

11   (PREPA)) and Plaintiffs oppose (Case No. 10-1289, Docket No. 38).  Following our order

12   consolidating these two cases (Case No. 10-1287, Docket No. 22), UTIER and PREPA replied

13   to Plaintiffs' opposition.  (Docket Nos. 23 (PREPA); 24 (UTIER).)

14                                                  **I.**

15                                **Factual and Procedural Summary**

16          We draw the following factual summary from Plaintiffs' complaints (Case No. 10-1287,

17   Docket No. 1; Case No. 10-1289, Docket No. 7).  In ruling on a motion to dismiss, we assume

18   all of Plaintiff's allegations to be true and make all reasonable inferences in its favor.  See

19   Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).  José A. Negrón-Matos worked for the

20   "Technical Brigade" of PREPA's office in Juana Díaz.  On December 5, 2007, a coworker

21   threw a 4"x4" wooden board at  Negrón-Matos' head, causing a laceration.  Following this

---

[1] It is unclear whether Plaintiffs refer to the federal Whistleblower Protection Act of 1989, Pub. L. No. 101-12 (codified in scattered sections of 5 U.S.C.), or to Puerto Rico's Whistleblower Protection Act, 1 L.P.R.A. §§ 601–606 (2008).

1    injury, Negrón-Matos returned to the Juana Díaz office and then went to PREPA's infirmary

2    facility in Ponce.  Later that afternoon, Negrón-Matos went to SCH's emergency room, where

3    he received twelve stitches to his head and was released.  On January 2, 2008, Negrón-Matos

4    again went to SCH's emergency room, complaining of a headache and liquid leaking from his

5    ears.  SCH put Negrón-Matos under observation and released him that same day.  Negrón-

6    Matos' condition worsened, and on the morning of February 5, 2008, he was found dead by his

7    parents.

8         After Negrón-Matos' death, his father, Plaintiff Negrón-Santiago, learned of the injury

9    caused by Negrón-Matos' coworker on December 5, 2007.  Negrón-Santiago requested that

10   PREPA and UTIER conduct investigations of Negrón-Matos' injury.  No investigations took

11   place. Furthermore, Plaintiffs have not received the insurance benefits owed to them by UTIER

12   as next-of-kin to Negrón-Matos.  Plaintiff Negrón-Santiago filed various administrative

13   complaints before federal and Commonwealth agencies.  In the wake of these complaints,

14   Negrón-Santiago was randomly drug tested by PREPA three times within a year.  Plaintiffs also

15   make a murky allegation of retaliation based on tampering with Negrón-Santiago's electric

16   meter.

17        Plaintiffs first filed suit in this district in February 2009 before Judge Acosta, alleging

18   the same causes of action against the Defendants here plus the deceased's coworkers and the

19   Fondo del Seguro del Estado. (Case No. 09-1109, Docket No. 1.)  Following SCH's motion to

20   dismiss (Case No. 09-1109, Docket No. 5), Plaintiffs sought and were granted voluntary

21   dismissal of all claims against SCH.  (Case No. 09-1109; Docket No. 10.)   Negrón-Matos'

22   coworkers prevailed in their motion to dismiss the claims against them.  (Case No. 09-1109,

1    Docket No. 27.)  On September 2, 2009, Judge Acosta granted Plaintiffs' motion to voluntarily

2    dismiss claims against the remaining parties.  (Case No. 09-1109, Docket No. 61.)

3            On April 7, 2010, Plaintiffs filed two separate actions before us.  The first, Case No. 10-

4    1287, arises from medical care provided by SCH to Negrón-Matos; Plaintiffs claim damages

5    for violations of EMTALA, HIPAA, and Puerto Rico's tort laws by SCH and unknown doctors

6    and insurers.  The second suit, Case No. 10-1289, presents a litany of allegations against

7    PREPA, UTIER, and unknown defendants.  Claims in that case include violations of HIPAA,

8    OSHA, half of the Bill of Rights, Puerto Rico tort law, and "retaliation and violations to the

9    whistleblower act and other criminal, civil, and labor laws." (Case No. 10-1289, Docket No. 7.)

10          In its motion to dismiss, SCH argues that: (1) HIPAA provides no private right of action;

11    (2) Plaintiffs' EMTALA claim is time-barred; and (3) Plaintiffs have failed to state a claim

12    under EMTALA. (Case No. 10-1287, Docket No. 4.) SCH also moves for attorney's fees under

13    28 U.S.C. § 1927.  (Id.)  Plaintiffs respond by arguing that they have properly pleaded a claim

14    under EMTALA and that equitable tolling preserves that claim.  (Civil No. 10-1287, Docket

15    No. 5.)

16          UTIER moves to dismiss based on Plaintiffs' failure to state a claim upon which relief

17    can be granted.  (Case No. 10-1289, Docket No. 13.)  PREPA also argues that Plaintiffs have

18    failed to state a claim and, in addition, argues that the case should be dismissed for failure to

19    join a party under Federal Rule of Civil Procedure 19.  (Case No. 10-1289, Docket No. 16.)

1                                                    **II.**

2                                    **Dismissal Under Rule 12(b)(6)**

3         A defendant may move to dismiss an action against him, based solely on the complaint,

4    for the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

5    P. 12(b)(6).  In assessing this motion, we "accept[] all well-pleaded facts as true, and we draw

6    all reasonable inferences in favor of the [plaintiff]."  Wash. Legal Found. v. Mass. Bar Found.,

7    993 F.2d 962, 971 (1st Cir. 1993).

8         The complaint must demonstrate "a plausible entitlement to relief" by alleging facts that

9    directly or inferentially support each material element of some legal claim.  Gagliardi v.

10   Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

11   559 (2007)).  "Specific facts are not necessary; the statement need only give the defendant fair

12   notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551

13   U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 559).  An

14   "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice to demonstrate

15   a plausible entitlement to relief.  See Sanchez v. Pereira-Castillo, 590 F.3d 31, 37 (1st Cir. 2009)

16   (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

17                                                   **III.**

18                                               **Analysis**

19   **A.    Claims Under HIPAA and OSHA**

20        Plaintiffs assert claims under HIPAA against all parties and claims under OSHA against

21   PREPA and UTIER.  HIPAA creates no private right of action.  See Miller v. Nichols, 586 F.3d

22   53, 59–60 (1st Cir. 2009).  Thus, Plaintiffs' claims for damages under HIPAA fail.

Civil Nos. 10-1287/10-1289 (JAF)                                                          -6-

1      Likewise, OSHA confers no private right of action and so these claims also fail.  See

2 Pedraza v. Shell Oil, Co., 942 F.2d 48, 52 (1st Cir. 1991) (citing Pratico v. Portland Terminal

3 Co., 783 F.2d 255, 266 (1st Cir. 1985)).

4      **B.      Whistleblower Protection Act**

5      Plaintiffs claim that UTIER and PREPA violated an unspecified Whistleblower

6 Protection Act.  UTIER has not addressed this claim and PREPA mentions the Whistleblower

7 Protection Act as part of its discussion of retaliation under Title VII, failing to explain how

8 Plaintiffs have not stated a claim under the Whistleblower Protection Act.

9      To the extent Plaintiffs claim a violation of 5 U.S.C. § 2302 we order dismissal sua

10 sponte.  See Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36–37 (1st Cir. 2001) (holding

11 that sua-sponte dismissals will be upheld where "the allegations contained in the complaint,

12 taken in the light most favorable to the plaintiff are patently meritless and beyond all hope of

13 redemption.") The Whistleblower Protection Act of 1989, by its terms, applies only to federal

14 employees.  See generally 5 U.S.C. § 2103 (defining "employee," as later used in § 2302, to be

15 one who is employed in the federal civil service).  We see no manner in which employees of a

16 Commonwealth-affiliated utility company could be classified as federal employees for purposes

17 of the Whistleblower Protection Act.  Therefore, we find any claims under the Whistleblower

18 Protection Act to be patently meritless.  We consider claims under Puerto Rico's Whistleblower

19 Protection Act in part III.F., infra.

20     **C.      EMTALA Claims Against SCH and Unknown Parties**

21     Plaintiffs claim that the care SCH and its physicians provided to Negrón-Santiago violated

22 EMTALA.  SCH argues that Plaintiffs' EMTALA claims are time-barred because this suit was

Civil Nos. 10-1287/10-1289 (JAF)                                        -7-

1    filed over two years after the alleged violation of EMTALA.  See 42 U.S.C. § 1395dd(d)(2)(C)

2    ("No action may be brought under [civil enforcement] more than two years after the date of the

3    violation with respect to which the action is brought.").  In response, Plaintiffs claim that we

4    should recognize equitable tolling in this case because SCH was a cause for their delay in filing

5    the case.  (Case No. 10-1287, Docket No. 5.)  In support, Plaintiffs state that SCH never

6    answered the complaint in the prior case and "had control of all the documents (medical

7    records), evidence, and witnesses (physicians, medical support personnel, nurses, and others)

8    but failed to provide any of then [sic] to the plaintiff before filing the motion to dismiss.

9    Rule 26 was never conducted." (Id.)

10        It is unclear whether equitable tolling applies to EMTALA's limitations provision; the

11   First Circuit has yet to squarely address the issue.  The Supreme Court recently noted that

12   "nonjurisdictional" statutes of limitations carry a "rebuttable presumption in favor of equitable

13   tolling."  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010) (citing Irwin v. Dep't of Veterans

14   Affairs, 498 U.S. 89, 95–96 (1990).  A "nonjurisdictional" statute of limitations is one that

15   "seek[s] primarily to protect defendants against stale or unduly delayed claims."  John R. Sand

16   & Gravel Co. v. United States, 552 U.S. 130, 133 (2007).  A "jurisdictional" statute of

17   limitations, on the other hand, has broader "system-related goal[s]" like advancing judicial

18   efficiency, facilitating the administration of claims, and limiting the waiver of sovereign

19   immunity.  Id.

20        For those statutes of limitation to which equitable tolling applies, a litigant who seeks

21   tolling must establish at least two elements: "(1) that he has been pursuing his rights diligently,

22   and (2) that some extraordinary circumstances stood in his way."  Pace v. DiGuglielmo, 544

Civil Nos. 10-1287/10-1289 (JAF)                                                    -8-

1    U.S. 408, 418 (2005).  The First Circuit expands upon this test and considers the following five

2    factors:  "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time

3    limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent;

4    and (5) the claimant's reasonableness in remaining ignorant of the limit." Neves v. Holder, 613

5    F.3d 30, 36 n.5 (1st Cir. 2010) (quoting Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001)).

6            In this case, Plaintiffs do not proffer an extraordinary circumstance that prevented them

7    from timely filing this suit.  The existence of evidence in SCH's possession that Plaintiffs do

8    not have access to in the pre-discovery phase is not, standing alone, extraordinary.  Plaintiffs

9    have not demonstrated how this information in SCH's possession prevents Plaintiffs from

10   pleading a prima-facie claim under EMTALA.  Furthermore, Plaintiffs have made no showing

11   as to how they diligently pursued their rights following the dismissal of their previous suit.

12   Thus, we find that Plaintiffs' EMTALA claims against SCH and unknown doctors and insurers

13   are time-barred.

14   **D.      Claims Against UTIER**

15           UTIER argues that Plaintiffs' Title VII claim must fail because Plaintiffs have made no

16   plausible claim of discrimination.  Title VII prohibits labor organizations from discriminating

17   on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(c).  Plaintiffs

18   have failed to plead any basis for discrimination.  From the facts in the complaint we cannot

19   infer that Negrón-Matos was assaulted on the basis of some improper discriminatory animus.

20   Similarly, there is no indication from the pleadings that Plaintiff Negrón-Santiago filed claims

21   with UTIER of discriminatory conduct towards Negrón-Matos or himself, which would trigger

22   the anti-retaliation protections of Title VII.  See 42 U.S.C. § 2000e-3(a).

Civil Nos. 10-1287/10-1289 (JAF)                                                                    -9-

1        Plaintiffs' § 1983 claims are equally ill-fated.  UTIER argues that it is not a state actor

2    and, thus, cannot be held liable for violations of constitutional rights.  Plaintiffs do not provide

3    the slightest argument as to UTIER's acting under color of state law.  Therefore, Plaintiffs'

4    claims of violations of the First, Fourth, Fifth, Seventh, and Eight Amendments also fail.

5    **E.      Claims Against PREPA**

6        Plaintiffs' Title VII claims against PREPA suffer from the same infirmities as the Title

7    VII claims against UTIER.   Title VII prohibits employers from discriminating against

8    employees on the basis of race, color, sex, or national origin.  42 U.S.C. § 2000e-2(a).  The

9    complaint does not state, and we cannot reasonably infer from the factual recitation, that

10   PREPA discriminated against Negrón-Matos or any Plaintiffs on the basis of race, color,

11   religion, sex, or national origin.  Nor is there any indication that a claim for discrimination on

12   such grounds led to retaliation by PREPA against Plaintiffs.

13       PREPA argues that Plaintiffs have failed to satisfy the pleading standards for their

14   various Constitutional claims under § 1983.  We agree.  Plaintiffs do not allege, and we are

15   unable to infer from the facts pleaded, how the First, Fourth, Fifth, Seventh, Eighth, or

16   Fourteenth Amendments were violated by PREPA. It is unclear how the injuries

17   alleged—Negrón-Matos' death, failure to pay insurance benefits, repeated drug tests of Negrón-

18   Santiago, and the loss of test results for Negrón-Santiago's power meter—violated any

19   Constitutional rights.  Instead, we are presented with a blanket assertion that "constitutional

20   rights (U.S. Constitution) under the First, Fourth, Fifth, Seventh, and Eight, and Fourteen [sic]

21   Amendment, the laws of the United States and other rights under state and federal labor laws

22   were and continue to be violated by co-defendants; Prepa, UTIER."  (Case No. 1289, Docket

Civil Nos. 10-1287/10-1289 (JAF)                                                      -10-

1    No. 7.)  The complaint's factual recitation might allow us to infer the pleading of a tort claim

2    against PREPA for Negrón-Matos' death or for the failure to pay Plaintiffs certain insurance

3    benefits.  It does not, however, lead us to infer the violation of any Constitutional rights.

4    **F.      Supplemental Claims**

5           Because we have disposed of all federal claims, we decline supplemental jurisdiction

6    over their claims arising under Puerto Rico law.  See 28 U.S.C. § 1367(c)(3).

7                                              **IV.**

8                                      **Attorney's Fees**

9           SCH moves for the provision of attorney's fees under 28 U.S.C. § 1927, arguing that

10   Plaintiffs' attorney unreasonably and vexatiously filed this suit.

11          Section 1927 holds an attorney personally responsible for "excess costs, expenses, and

12   attorneys' fees reasonably incurred" by the opposing party as a result of that attorney's

13   "unreasonably and vexatiously" multiplying the proceedings in a case.  The First Circuit has

14   noted that the vexatious conduct prohibited by § 1927 is judged by an objective standard that

15   anticipates conduct more severe than "negligence, inadvertence, or incompetence" but does not

16   require a showing of subjective bad faith.  Cruz v. Savage, 896 F.2d 626, 631–32 (1st Cir.

17   1990).

18                        [I]f an attorney's conduct in multiplying proceedings is
19                        unreasonable and harassing or annoying, sanctions may be imposed
20                        under section 1927.  The attorney need not intend to harass or
21                        annoy by his conduct nor be guilty of conscious impropriety to be
22                        sanctioned.  It is enough that an attorney acts in disregard of
23                        whether his conduct constitutes harassment or vexation, thus
24                        displaying a "serious and studied disregard for the orderly process
25                        of justice."

1    Id. at 632 (quoting United States v. Nesglo, Inc., 744 F.2d 887, 891 (1st Cir. 1984)).

2        In the present case, we cannot deny that the pleadings filed by Plaintiffs' attorney are

3    bad, even bordering on terrible.  The pleading of claims under HIPAA and OSHA, which even

4    the most rudimentary research would have revealed not to confer private rights of action, is but

5    the opening salvo in a barrage of incompetence—the likes of which we see all too often.

6    Plaintiffs' attorney clearly "cut and pasted" the text of the complaint from the prior case before

7    Judge Acosta, neglecting to remove references to co-defendants who were not named in the

8    present suit.  Despite SCH's motion to dismiss in the prior case putting him on notice of the

9    glaring infirmities of his EMTALA pleading, Plaintiffs' attorney recycled, verbatim, that

10   EMTALA pleading in this case.

11       We cannot conclude, however, that this incompetence is an example of the kind of

12   "serious and studied disregard for the orderly process of justice" envisioned by § 1927.

13                                                      **V.**

14                                              **Conclusion**

15       For the foregoing reasons, we hereby **GRANT** Defendants' motions to dismiss (Case

16   No. 10-1287, Docket No. 4) (Case No. 10-1289, Docket Nos. 13; 16).  We **DENY** SCH's

17   motion for attorney's fees (Case No. 10-1287, Docket No. 4).

18       **IT IS SO ORDERED**.

19       San Juan, Puerto Rico, this 16th day of February, 2011.

20                                                      s/José Antonio Fusté
21                                                      JOSE ANTONIO FUSTE
22                                                      Chief U.S. District Judge